All right. Welcome to Day 2 of the West Courtroom Panel. We've got 4 cases to be argued this morning. We'll probably hear 2 when we might take just a real short dash from the bench between the 3rd and 4th, but we'll see how it goes. First case up is BP v. Claimant ID. Mr. Stokely. Thank you, Your Honor. May it please the Court, I represent Norwegian Spirit Limited, who owns and operates a cruise ship vessel named the Norwegian Spirit that is regularly embarks and disembarks passengers from its home port at the Port of New Orleans here in New Orleans. During the relevant time periods applicable to this issue, Norwegian Spirit embarked passengers from the Port of New Orleans for 10 months preceding the spill, 10 of 16 months preceding the spill, and 18 of 24 months after the spill. As a result of the spill, Norwegian Spirit had canceled reservations. While not required in the settlement program, I put into the record at 382-400 a spreadsheet detailing lines and lines of canceled reservations after April 20, 2010, just because I thought it made sense to show that. As a result, we had economic loss, economic loss that fits right in the framework, squarely within the framework of the settlement program. After detailed briefing before the court-supervised settlement program appeal panel, the appeal panel agreed and issued a very the class in zone A entitled to business economic loss. Notably, it quoted a quote that I like quite a bit. It said, if any cruise ship deserved membership in the settlement class of this agreement, it was the Norwegian Spirit, a vessel which had a contract by which it embarked and returned passengers in New Orleans, fueled, staffed, and supplied itself in New Orleans, and otherwise exhibited itself as primarily a New Orleans-based vessel. Going further, even though not required and consistent with me putting the canceled reservations, it said, though causation of hardship by the spill is not relevant to this inquiry, this panelist could very well find a cause and effect relationship between the actions of Norwegian Spirit and the subject spill. I take it that the term home port is not an industry term. Is that correct? I believe it is an industry term, and the appeal panel right squarely before the appeal panel was competing expert reports. There was an expert report that BP put in themselves, and then we responded with two expert reports, and the appeal panelist analyzed those expert reports and determined that the term port of registry and the term home port are not synonymous, and that a home port for a cruise ship vessel is the port at which it embarks and disembarks passengers. But what I believe is important for this court, and it is the standard of review, which is here, the district court, when they reviewed the appeal panel, they did not, they expressly, the district court expressly said, this court does not opine one way or the other as to the dispute related to the competing experts on the definition of home port and whether it's synonymous with port of registry. That is important because the, when you look at an ambiguity in a contract, you can look in the Fifth Circuit, as I'm sure you're aware, at expert testimony to determine the definition of a trade term or trade usage of terms, and one of them was home port, which is what the, and so a long time ago, Judge Higginbotham issued an opinion that said this is a unique issue because the ambiguity is reviewed de novo, and then if you find an ambiguity, the extrinsic evidence, that is reviewed by, is a fact issue, and then the middle issue, which is, if we're going to look at expert, that's a combined issue of fact and law. I'm not, and they weren't sure how it should go, and they refined it a little bit, but what's important here is that the district judge did not address, expressly didn't consider that, and the appellate panel did consider it, and so as we sit here today, the district judge, while it exercised discretionary review, it exercised it on a threshold contract interpretation issue, and if you find in favor of Norwegian Spirit on that issue, which is a de novo review, then this Court can reverse, render judgment, reinstating the appeal panel decision who did all the factual finding and all the work related to looking at the expert reports and looking at the briefing. Importantly here, the district court had three pages of briefing from both sides to look at this issue. Let me ask you this. Do any certificates of registry list a home port? Our expert says, one of our experts says that some do, and he provided an example in the record, but I also think that there are certificates of registry in Louisiana, there's certificates in some of them may not. I haven't found any that do. I know that our expert put one, at least one in, but this is the issue. It's essentially a drafting error in my view, because there are only three cruise ships. Let me follow up on that, though. Is there a provision in this certificate of registry for listing a home port? In the Bohemian certificate of registry, which is our certificate of registry, there is no place that says home port, and that's why the issue is silent on what our home port is. There is a port of registry, and BP presented the position to the appeal panel that the port of registry was synonymous with home port, and after reviewing the experts, it is, in fact, not synonymous. A port of registry is kind of like your birth certificate, your nationality, your home port is your home address, your domicile. And so to equate the port of registry as our home port would be to, it would go, one, it would allow someone to say my home port is New Orleans when they were in the other side of the world, and say they had damage here. But the, importantly, though, I think that the appeal panel resolved that issue, and the district court here only looked at one issue, and going back to the definition of home port, Carnival had already filed a lawsuit and settled. The BP knew that the cruise lines were people who would want to have a claim. They didn't exclude the cruise lines, but I, the only claim that Norwegian Cruise Line has filed is this one, and I represent Norwegian Cruise Line, I've been there from the very beginning. Before we filed the claim, I flew down here, looked at the passengers embarking and disembarking to see what our connection was to Zone A at the Port of New Orleans. I took 136 pictures, and they're in the record, just so I was comfortable that this ship, I looked at all the ships, this was the only one. Unlike Royal Caribbean, they filed for all the ships that touched Gulf Coast waters. I filed for one because I was home ported at the home port in Port of New Orleans. I even have a home porting agreement with the Port of New Orleans that was entered into in October of 2008 that commits this by the appellate panel. And the district court, while it, this is a unique case because of the dozens or hundreds of appeals, every one that I've seen except for one, and it was one that Judge Stewart, Chief Judge Stewart, that you presided over the opinion issued on January 4th, was of the district judge denying discretionary review. I know there's been some arguments probably of others, but the opinions haven't come out. But in the one that the opinion has come out that's similar posture to ours, it says the appeal panel ruled one way, the district judge exercised discretion and overturned on a contract interpretation issue. And this court considered the contract interpretation issue, and it was an ambiguity case, de novo, and the court issued a ruling that in that posture, you look at that issue de novo. What case is that? That is, it doesn't have a citation. It has the detail, you know, the claimant number, but it's 2019 Westlaw 113684. The federal appendix site is not in yet. Are you making the point, are you trying to say that we should consider this issue de novo because the court did take review? This is not an abuse of discretion issue. Absolutely. Right? That's the, it's a contract interpretation issue that we need to decide de novo. Is that what you're saying? That is exactly right. And, uh, but uniquely here, the judge, there was two, two contract interpretation issues. One of them is one that required review of extrinsic, of expert testimony to determine an ambiguity and then review of extrinsic evidence to resolve that ambiguity. That is, where is this ship home ported? The second one, and the district judge exercised discretionary review, but the district judge did not review that issue. The district judge said this court does not opine one way or the other as to that dispute, referring to that issue. But then the district court took on a different issue, which is also a contract interpretation issue, and the district court took on an issue related to the definition in, in, of Section 38 of the settlement agreement, home ported shall mean the home port of a vessel as documented by a 2009 or 2010 government-issued vessel registration. Now, interestingly, the, what the district judge did was he took that and he said, that is an exclusionary definition, and it says you cannot, if you don't have it, it is an absolute, you must have this, and if you don't, you have no claim, and that's the end of the story. But that's not how, one, that's not how the, the agreement has, has been interpreted, has worked. But, two, it doesn't make sense, because the, by defining home port the way it did, and this is a definition that Norwegian Cruise Line was not a part of, it was BP, was, was involved in the drafting at least, to, it's the incorporation by reference doctrine, and it says it incorporates another document to define this, so when you're supposed to read the two together, so I think the way this should be looked at is, take this settlement agreement, insert Norwegian Spirit on one side, BP on the other, an agreement between the two, the definition, home ported shall mean the home port of the Exhibit A, and Exhibit A would be our vessel registration. Our vessel registration does not have the home port written on it, that's not in dispute, it says it has the port of registry, that's where it was built, but it does not have our home port. It can't mean that for any vessel that doesn't have it on the registry that you're automatically out, is that your point? That is my point, and I, and I think that when you just read it, and you're going to review it de novo just that way, that that's what, that's the plain reading, that's how it should be interpreted, but to go a little bit further, the district court read into that definition, exclusionary principles that you're out, but in this case, this, this settlement agreement, Exhibit 4A is titled documentation requirements for a claim, and in Exhibit A it has all sorts of document requirements that you have heard argument over, I heard one yesterday, related to fixed and variable and cogs. Well, in that situation, you submit your documents that you have, and you submit your profit and loss statements, and they may have details for fuel, rentals, they may have those together, and then the claims administrator comes back to you and asks you if you have receipts so that you can spread those out. The, essentially, the claims administrator gets to the bottom of it, and Would you be making the same argument if the document did say home port, and it said home I would. You know why I would? I thought about this yesterday. I heard the argument that substance should prevail over form, and I thought that's a great, I never really thought of it, that's my case, and then I thought, you know what? My case isn't substance over form, my case is substance over silence. My case is substance over ambiguousness. But even if my case was substance over form, I'd be here making the same arguments that were made yesterday, that substance should prevail over form, because my ship is home ported. If you look at the evidence, which the appellate panel already did, and I don't believe this Court needs to, but if you look at it, you will see a home porting agreement, or a berthing agreement that says Norwegian Cruise Lines shall commit the Norwegian Spirit vessel to home port operations beginning on October 31, 2008, for three years, and opposing counsel would point out that it allowed us to use a different ship, which is why I put the itinerary in, to show that that ship was there. Any one of us, during that time period, could have walked over two or three blocks and seen Norwegian Spirit there, embarking and disembarking passengers every week. But we don't have to go as far as you say. You don't. We could say, well, that is an exclusion, if the document is to the contrary, you can't win. That, if, that could be a stopping point, and you would still win in this case, according to your theory, your first theory, is that right? That's right. I think that all the Court needs to do is review the district judge's determination that this definition was an exclusion, and reverse that, review that de novo and reverse that, and then render judgment, reinstating the appellate court decision who did the heavy lifting on all the factors. Should we render, if we were to agree with you, this is assuming argumento, or should we send it back? That was an issue, even in Gulf Seafood, if I'm remembering right, that there was a viewpoint that people thought we should remand the dissenter, and a dissenting judge thought we should remand for the district court to construe it correctly in the first instance. I think here, that you should not, for a couple reasons, but primarily, the district judge exercised discretion and said, I've looked at this issue, and I've looked at what the issue is, and I don't want to opine one way or the other. They already said, looked at the issues, even summarized the issues, and said, you know, that Norwegian argues this, the other side argues this, and then it says, this Court does not opine one way or the other, i.e., this Court defers to the appellate panel's decision there and decides it on some other grounds. I think that if the Court was to do that, BP would have needed to have filed a cross appeal, arguing that that should have been determined by the court of the ---- by the district court, and that would have been a review of clear ---- of the abuse of discretion standard, is this going to repeat itself, and it's not, because we're the last cruise ship that could possibly file a claim. So I don't think that would be the appropriate result. I think it should be reversed, rendered judgment, reinstating the appeal panel decision. A couple other ---- oh, I'm sorry. I'm out of time, but I can ---- You've got a red light, but you've preserved your rebuttal time. Yes, Your Honor. Thank you. When you come back up. All right, Ms. DeVito. Good morning, Your Honors, and may it please the Court. I'm Amanda Davidoff, appearing for BP. Judge Elrod, it absolutely can and does mean in the settlement agreement that if a vessel doesn't have a 2009 or 2010 government-issued vessel registration that documents a home port in the Gulf Coast areas, it is not a class member. Judge Barbier correctly recognized that when he exercised his discretionary authority to review the appellate panel decision and reverse, and he put to rest the charges of ambiguity that we heard this morning, and he put them to rest using the simple language of the settlement agreement, which restricts the settlement class to vessels that were home ported in the Gulf Coast areas, critically, as documented by a 2009 or 2010 government-issued vessel registration. But if there's evidence that some certificates of registration have a line item for home port and others don't, and this one didn't, doesn't that mean something's lacking from that certificate of registry? No, it doesn't, Your Honor, and I think that kind of argument might bear some weight if the settlement agreement required the claims administrator to determine what the home port is as a sort of absolute matter. Well, one way you could look at it is the, when they formulated that definition, they assumed that the certificate of registry would list the home port. Well, let me, that may have been an assumption that many certificates of registry would list the home port, and deciding that if you can document your home port in your government-issued vessel registration, a single document, easily reviewed, easily obtained, easily manageable for the claims administrator to handle thousands or hundreds of thousands of claims, you know, that would have been a very reasonable way for the parties to decide that the settlement, that the claims administrator had to make that decision. In other words, to avoid the situation we're in now, where the claimant is asking for the claims administrator to have to consider for every type of industry that uses vessels in the Gulf Coast areas what the term home port means for that industry. And then to look at... I could see that if ordinarily the port of registry was the home port, but it's almost never the case that particularly a foreign-registered vessel that operates in the U.S., the home port will be at the port of registry. Well, Your Honor, actually we did, we're turning to extrinsic evidence now, which we don't think is appropriate here because the settlement agreement is so clear, but actually it is still the subject of dispute and we put in extrinsic evidence in the appeals panel that the port of registry is frequently the term used for home port. There's case law in the United States federal courts. We cited two cases, Hayes v. Pacific Mail Steamship and Japan Line v. City of Los Angeles, both of which, I mean, Hayes couldn't be clearer. It says the port of registry is the home port because that's where the owner is located and it doesn't matter if a ship is frequently away from that home port. Japan Line v. City of Los Angeles describes the history of the home porting doctrine under U.S. law, which is that a state taxing authority can't tax a vessel that's home ported in a foreign jurisdiction because that would infringe on commerce powers of the United States. So you argue that the port of registry is synonymous with home port. Is that the essence of your argument? Not at all, Your Honor. That's not the essence. The essence of our argument is that the settlement agreement is 100% clear. Well, we're always wary when lawyers say things are clear. Otherwise, you wouldn't be here. I hear you, but somewhat where Judge Davis was. I mean, with cruise ships, I can see where other kinds of vessels that come into the country, bringing in cargo, et cetera, they go out, but cruise ships, sort of by definition, they're built one place, they've got a registry in the Bahamas or whatever, which may be for tax purposes, but yet home port may be indicative of where the flow of passengers, et cetera, et cetera. You argue that this is a static definition that doesn't change even if all its passenger unloading was occurring in Boston or wherever else during that period. Your argument is that the home port is always going to be the initial site. That's right, Your Honor, and as Judge Elrod pointed out, if the government-issued vessel registration identifies the home port in New Orleans, the claims administrator didn't go out and check whether the vessel was frequently in the Gulf Coast area waters. The documents clearly say it. Home port is Port of Registry, boom-da-boom-da-boom. Presumably, y'all wouldn't be here, but back to the question of where it doesn't say, where it's solid. I think it's clear, and Judge Barbier did, too, when he exercised his authority to- One thing, Section 123 says all entities doing business and operating in the Gulf areas or specified Gulf waters, owned and operated, or leased a vessel, and this is the language, that was home ported in the Gulf Coast areas at any time between these dates. Doesn't that indicate that a vessel is going to be home ported in different places? Well, no. I mean, vessels, by their nature, are movable, and a vessel could change its home port at a period of time and document that in a government-issued vessel registration, so certainly home ports could change. Government-issued vessel registrations can be issued every year in some jurisdictions. But all home ported in the Gulf Coast area, not the Bahamas or somewhere else. Right. At home ported in the Gulf Coast areas at any time between these dates, so that tells me they anticipate the boat will be home ported in various places in the Gulf Coast area. Well, we have to turn back to the language of the settlement agreement. Section 1.2.3 and Section 38.82 are the key language here, and read together, they restrict the settlement class to vessels that were home ported in the Gulf Coast areas as documented by a 2009 or 2010 government-issued vessel registration. In other words, that Section 1.2.3 that you're looking at, Judge Davis, incorporates the definition of home ported in Section 38.82, which defines home ported as home ported as documented in a 2009 or 2010 government-issued vessel registration. And I think that language in 38.82 is really important. It says as documented in the 2009 or 2010 government-issued vessel registration. It doesn't say, for example, as documented by a 2009 or 2010 government-issued vessel registration or as documented by a 2009 or 2010 government-issued vessel registration or some other evidence that the CSSP might find useful to this analysis. And that's really important in the context of this settlement agreement. If we were to do a substantive review of this, rather than your textual analysis, do you concede that this vessel meets the home, that it was in fact home ported for the, it was more here than anywhere else during the relevant time period? Not at all, Your Honor. Wasn't it technically more here than anywhere else for the days? If you put the number of days, it's more than half of the days are in New Orleans. If you look at the chart. The key point, Your Honor, I'd like to answer that in two ways. But the key point is that it's for the relevant period. Was it in the right place for the relevant period? So I'll answer it in two ways. The first is, if we were to resort to extrinsic evidence, the first step would be to, extrinsic evidence about the meaning of home ported as used in the settlement agreement. And we submitted an expert report that showed that that is the same as port of registry. So that would be the first thing for. Right. But that was, your expert was not, was less believed than the other expert. And so they, they, that's, they get to make that determination when they're doing the factual review, right? That was by the appeals panel, Your Honor. Right. Judge, Judge Barbier did not review that question. He didn't defer to the appeals panel on. But. No court has reviewed the question of, of whether that's a correct determination. And, and I would say. And whether we should give it any deference or not, you know. But can we get back to the question that I asked you? Sure. 75 days during the time period for the class versus 27 days in Boston. I understand that the time period used by the claims administer was 47 days versus 51 days, but still that's a significant amount of days in, in his home, home in New Orleans. What's, what's wrong about that? I want to take a step back because if the court was going to consider extrinsic evidence about where the vessel was located, it would have to start with the question of what time period do I have to look at to consider that question? It's one of two time periods that you could pick, right? April 20th, 2010 to April 16th, 2012, which is the time period in the settlement agreement class definition. Or you could pick 2009 to 2010, the time period used by the claims administrator. Which one do you prefer? I think it's both, Your Honor. Section 38.82 says, now this is an unusual situation. We've got a defined term here and we're saying we're going to use extrinsic evidence to figure out what the defined term means. So in doing that, I don't think we can read out the actual definition in the settlement agreement, which is in 38.82 and says, says home ported means home ported as defined in a 2009 or 2010 government issued vessel. Pick whichever one you want to pick, but this question is still on the table. Why is a substantive matter, wasn't it home ported in New Orleans enough to be home ported? So pick one and go through it and tell me why or why not. All right, so being home ported in the Gulf Coast areas for either the year 2009 or the year 2010 is a prerequisite to class membership. That's in 38.82. Neither the birthing agreement nor the itinerary show that that happened. The birthing agreement is just a contract. Claimant has admitted it's not a government issued vessel registration. It allows the use of any vessel other than the Norwegian Spirit that's equivalent. If we look at the itineraries, they also don't show that the Norwegian Spirit was home ported into the year 2009 or the 2010 in the Gulf Coast areas. The CSSP did address this issue and that's at record on appeals 1669, 1672, and 1673. It closely analyzed that question and what it found was that in both of those years, the Norwegian Spirit embarked on more voyages from Boston and Quebec than it did from New Orleans. It also found that in both of those years, the Norwegian Spirit spent 50 percent of its days at foreign ports and 15 percent of its days at U.S. ports and of that 15 percent, it spent less than half of its days at ports in the Gulf Coast areas. The CSSP did that analysis and it found that in the relevant years, 2009 and 2010, the Norwegian Spirit was not home ported in the Gulf Coast areas. Are you saying that because it's 47 instead of 51 in Boston, that that's deficient and therefore it wouldn't qualify under a substantive test? Absolutely, Your Honor. This is the problem with using extrinsic evidence for this exercise. Because you're saying 47 is not enough because Boston gets 51 during 2009 to 2010. That's right, Your Honor. You couldn't have multiple home ports because the definition that Judge Davis read for you, didn't, it said was home ported during this time period. It didn't say was the most home port and the only home port or exclusive home port. But that's only reading section 1.2.3, which has to be read together with the definition. Yeah, but that's the section that deals with class eligibility. It is. That's when it had to be home ported in New Orleans was in the period that's in the definition section for class eligibility because that's what we're talking about. Absolutely, Your Honor, but that definition of class eligibility uses the term home ported, capital H, capital P, which is defined in 38.82. I understand your argument on that, but I don't necessarily agree with that. Well, the home ported definition in section 38.82, you know, courts construe the settlement agreements and all contracts, of course, not to render any provisions superfluous or meaningless. This is the key use of the term home ported. Yes, it's also used to identify a claimant's zone in the alternative to the primarily docked analysis, but this is the key use. If we read this provision, home ported as documented in 2009 or 2010 government-issued vessel registration out of the contract, we've violated one of the critical canons of contract interpretation. One of the canons that Your Honor used when dealing with the Royal Caribbean appeal, you know, not to read any provision as superfluous and relied on that canon to hold that the only way to establish class membership as a vessel. But once you back up argument, if we say that term is ambiguous because the certificate of registry did not have a line item providing for home port, so it's silent, and we've got to look at extrinsic evidence, so what's your backup argument? If we have to look at extrinsic evidence, the first stop, as I was mentioning to Judge Elrod, is what does, you know, can we use extrinsic evidence to better understand the meaning of home ported in the settlement agreement? And we would go back to the point that, you know, and I think it's critical. As you were, I think, getting at Judge Davis, the way this is outlined in the settlement agreement, it assumes that the home port is going to be documented in the government-issued vessel registration, even though, of course, it's possible for vessels to move around. So that, as documented in the government-issued vessel registration, really has to be relied on in order to interpret the meaning of home ported. Home ported means the place that's documented in the government-issued vessel registration. I could go with you on that if the registry provided for a home port, but it doesn't. Well, it provides for a lot of locations. Home port could be any term. This is just a definition in a contract. We define home ported as the place that's documented in the government-issued vessel registration. Some certificates have a home port listed and some don't. Actually, Your Honor, there's no—Norwegian Spirit says there's evidence of one registry in the world that has a home port listed on it, that it's expert put in, but that counsel searched for other registries that list home ports and couldn't find them. Doesn't that hurt your argument, though? The fact that the term's never hardly used, and then it would mean that you could never have a cruise ship that qualified. No, I think what it would mean, Your Honor, is that what the parties meant, intended to do when they said home ported as documented in the government-issued vessel registration was to refer to the place that's identified in the government-issued vessel registration. Right, but if they don't do that, if they don't list the home port in most of the places, they're out of luck, even if they were properly in New Orleans. I don't think most—we're talking about most all of the people here. I mean, we've got three major cruise lines. None of them are class members, apparently. That's a consistent result, but with 150,000 claims, this is the first time— I'm not talking—I'm talking about cruise lines. If the definition was meant to say, we're going to exclude cruise lines because we're going to pick a criteria that cruise lines, as a matter of business conduct, cannot satisfy except for one in a blue moon, and by that way define cruise lines out of it, when it looks like what you're doing is making a bright line test for cruise lines, but really what you're doing is making an exclusion so that no cruise line can ever qualify except this one that you said is highly unique. That's—I don't know that that could possibly be the purpose of the settlement that went through all this with the cruise lines. Well, the purpose of the settlement was to resolve the claims of class members and to do it in a way that was administrable by the claims administration system. Well, you might as well just exclude all the cruise lines if it's only one in a blue moon that could have a home port registry on the registration. Well, the cruise lines had the perfect ability to read the settlement agreement and say, hey, I'm excluded. I'm going to go file a lawsuit, which is what Carnival Cruise Lines did. I mean, they're sophisticated litigants. They could read the agreement. They know what their government-issued vessel registrations say, and there are plenty of instances where claimants who say they were injured aren't able to claim under the agreement, and that's just a fact of the way the agreement was drafted. It could be because they were employed by a defendant in a 2179 case. It could be because their industry is interpreted to be a financial industry or a real estate developer. It could be because they filed late, but, you know, what we heard this morning from Norwegian Spirit was a lot of argument about, I took pictures, I was present in the Gulf Coast areas. None of that language is in the settlement agreement. Let me ask you this, though. I mean, this language that was home ported in the Gulf Coast areas at any time between those two dates, I mean, if we accept your argument, that means they would have to go get a certificate of registry in Boston, or they would be getting a certificate of a registry in New Orleans or Houston or any other Gulf Coast area, so, I mean, if that's what they meant by home ported. No, Your Honor. Really, I mean, the settlement agreement isn't meant to capture every person who sailed through the Gulf Coast areas, just as it didn't capture Royal Caribbean cruise ships. It had to be home ported, just as it says. It had to have been home ported as documented in a 2009 or 2010 government-issued vessel registration. Well, but this indicates they would be getting a new certificate of registry every time they went to a different port in the Gulf Coast area. That's okay. If they didn't get a certificate of registry, that's just fine, and maybe cruise lines don't have to do that, but they're not class members. Counsel, can you address remand versus render if we were to disagree with you, hypothetically? Yes. In our view, remand would be necessary, Your Honor. Judge Barbier didn't consider the extrinsic evidence. He expressly didn't consider the extrinsic evidence, and so the right result would be for him to have the chance to first consider it. Why can't we do like good Gulf seafoods and just look at it ourselves? We did that over a dissenting judge and said that was perfectly fine when it's all there already. It's not impossible to take that route, but the right result here, because the district court expressly decided not to rule on that significantly disputed issue, which the CSSP had found went BP's way, but the appeals panel had found a different way. Isn't that the same thing as Gulf seafood? Gulf seafood had a significant amount of extrinsic evidence in the record on that topic, but it wasn't an issue of contract interpretation there in the same way this one is. We've got expert reports. We've got itineraries. We've got the birthing agreement. There's a lot of material here that just hasn't been engaged in by the district court. We've heard from Norwegian Spirit that it's a three-page appeal to the district court. There were errors in the appeal panel decision on how it treated the extrinsic evidence, and those are the kinds of things that in the first instance the district court should be able to address. And I'd just like to say, Your Honor, that the settlement agreement doesn't require the claims administrator to decide what the home port is. All it has to decide is whether the 2009 or 2010 government-issued vessel registration documents a home port in the Gulf Coast areas. It doesn't, and that means that Norwegian Spirit is not a class member. Thank you. All right. Thank you. Back to you, Mr. Stokley. I could just address a couple of the issues that my opposing counsel raised. First, the case law that she cites, that's tax law related to avoiding taxation in multiple jurisdictions. The issue here is where the cruise vessel is home ported, not the taxation issues. Number two, the time period. My opposing counsel quoted from the appellate opinion, however, the appellate panel reasoning, but she just quoted where they were summarizing BP's arguments. So she quoted it as if it was the appeal panel's decisions, but it was really the appeal panel summarizing BP's arguments. Then the appeal panel summarized our arguments, and then at the end said, this panelist is further persuaded in finding the eligibility of Norwegian Spirit for class membership by the claimant-friendly provisions, and then found in our way on home port and the time frame. As between determining 2009 and 2010 versus the express dates in the definition, at any time between April 20th, 2010, and April 16th, 2012, it says it at any time during that time period. During that time period, we were there 18 out of 24 months. It was an enormous amount. It was over two-thirds. And, in fact, we have the home porting agreement with the Port of New Orleans. The other time period was a seasonal trip to Boston. We don't we have in the record we have a letter from the Boston Port Authority that says they don't have a home port agreement with Norwegian Spirit. The opposing council mentioned some things about we could have done what Carnival did. Carnival sued before this settlement agreement ever even became remotely thought of. And so that came and went. I think that really just operates to my benefit. They knew cruise lines had claims. They settled one with Carnival. They did not exclude cruise lines. Royal Caribbean didn't have a ship home ported in any port. There's only a couple cruise ports that could even be in the Gulf Coast waters. One is in Tampa, and very few ships embark and disembark from Tampa. The other one is in New Orleans. In New Orleans, there's two terminals. And Carnival is in one, and Norwegian Spirit was in the other during this time period. And then I think the most important thing here is the deference, Judge Elrod, that you asked if we should apply deference. And I think absolutely in this case this court should apply the deference to the appeal panel decision. But absolutely none to the district court. You want de novo for one and then deference to them. I do. I do because the de novo is a review of contract, and the one that the district court did not address was all of the factual issues that would be reviewed here on clear error if it was appealed, the factual issues. So I think that you would defer to— The district court's primary focus was on the berthing agreement, right? Yeah, the district court looked at the berthing agreement and actually misinterpreted my argument that I thought the berthing agreement qualified as a government-issued vessel registration. Maybe he thought it had a better one. Yeah. And I didn't think it was a government-issued vessel registration, but I thought it was a very, very compelling argument. One, because of what it said. Two, because it was with a government authority. The Port Authority of New Orleans is a quasi-government authority. And three, because it was subject to the approval of the Federal Maritime Commission. I felt like it's a very compelling document identifying our home port. That coupled with our certification from the U.S. Maritime— I believe our certificate saying that this vessel could embark passengers from U.S. ports. So while I think it's very compelling, I never took the position that it was a government-issued vessel registration. My position all along has been that the agreement is silent at best, ambiguous or ambiguous. Either way, you look at expert testimony to determine whether port of registry is synonymous with home port. It is not. I would invite this Court to do what Judge Elrod suggested possibly doing and looking at that issue, because I think it is a very, very clear issue. And then you would look to extrinsic evidence. One, the home porting agreement. Two, the itinerary confirming the same. And with that, I thank you very much for your time and consideration of my case. All right. Thank you. We have your argument. Thank you, counsel, for both sides.